FILED

OCT 2 0 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER L. EISEL,                    )
                                      )    No. CV 08-6183-HU
              Plaintiff,              )
                                      )
        v.                            )
                                      )    FINDINGS AND
MICHAEL J. ASTRUE,                    )    RECOMMENDATION
Commissioner, Social                  )
Security Administration,              )
                                      )
              Defendant.              )
_____)

Kathryn Tassinari
Drew L. Johnson
1700 Valley River Drive, First Floor
Eugene, Oregon 97401
        Attorneys for plaintiff

Kent Robinson
Acting United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
Franco Becia
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
///


FINDINGS AND RECOMMENDATION Page 1

Seattle, Washington 98104
    Attorneys for defendant

HUBEL, Magistrate Judge:

Jennifer Eisel brings this action pursuant to Section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for Supplemental Security Income benefits under Title XVI of the Social Security Act.

## Procedural Background

Ms. Eisel applied for benefits on June 7, 2005, alleging an onset date of December 8, 2004. The application was denied initially and on reconsideration. On December 14, 2007, an administrative hearing was held before administrative law judge (ALJ) William Stewart, Jr. In a decision dated December 28, 2007, the ALJ found Ms. Eisel not disabled. After the Appeals Council denied review, the ALJ's opinion became the Commissioner's final decision.

Ms. Eisel was 36 years old at the time of the ALJ's decision. She completed the 12th grade and received an office assistant certificate in 2001 from Lane Community College. She has no past relevant work and has not engaged in any substantial gainful activity since 2000.

## Medical Evidence

Ms. Eisel alleges disability from psychological impairments, including anxiety, depression, panic disorder, and obsessive-

FINDINGS AND RECOMMENDATION Page 2

compulsive disorder (OCD). She was treated with Zoloft and Welbutrin by Nicholas Telew, M.D., who saw her for medication management every two or three months from March 2004-April 2005. Dr. Telew completed a Mental Status Report on January 5, 2006, stating that according to his most recent objective findings, Ms. Eisel had a "euthymic and stable mood," intact cognition and concentration, persistence and pace, and no excess anxiety. Tr. 156, 158. Dr. Telew also wrote that Ms. Eisel was "responding to meds" and that her ability to maintain activities of daily living was intact. Tr. 157. Only six weeks later, on February 22, 2006, Dr. Telew signed a form certifying that Ms. Eisel was prevented by disability from repaying a student loan. Tr. 155. On the form, Dr. Telew stated that Ms. Eisel had "chronic depression and excessive anxiety," as well as "impaired attention/concentration." Id. Dr. Telew's records do not reveal the reason for the differences in these reports.

On March 10 and March 31, 2005, David Truhn, Psy.D., performed a psychological evaluation of Ms. Eisel. Tr. 252-260. Psychometric testing indicated that she had a Full Scale I.Q. of 83, falling at the 13th percentile and in the low average range. Several neuropsychological screening test were given. One of them was not completed accurately; Dr. Truhn attributed this to anxiety that interfered with her ability. Tr. 257. Achievement tests revealed no significant problems in reading, math or written expression, and no indication of learning disability. Id. On the Minnesota Multiphasic Personality Inventory II (MMPI-II), Ms. Eisel responded in a manner

FINDINGS AND RECOMMENDATION Page 3

similar to individuals experiencing significant psychological stress; the test indicated low self esteem, depression, and obsessive/compulsive behaviors and thinking. Id., tr. 260. Dr. Truhn diagnosed Generalized Anxiety Disorder; Dysthymic Disorder; Major Depressive Disorder, moderate, recurrent; Panic Disorder with agoraphobia; and Dependent Personality Disorder with obsessive/compulsive and passive/aggressive features. Tr. 259. Dr. Truhn recommended a medication evaluation, individual and group psychotherapy, programs to enhance self esteem, and vocational rehabilitation services in order to identify strengths and weaknesses. He concluded, "A sheltered workshop may help her develop appropriate interpersonal skills and work behaviors." Tr. 260. Dr. Truhn concluded that Ms. Eisel's prognosis was guarded, and that she seemed to "have little motivation to establish her own support system at this time." Id.

On July 25, 2005, Elizabeth Lyman, MS prepared a Mental Status Report cosigned by Martin Waechter, Ph.D. Tr. 132-134.[1] At that time, Ms. Eisel had been receiving counseling services every two to three weeks since November 3, 2003. Tr. 132. Ms. Lyman observed

---

[1] Under social security regulations governing weight to be accorded to medical opinions, "acceptable medical sources" specifically includes licensed physicians and licensed psychologists, but not nurse practitioners. However, the opinion of a treating nurse practitioner who works closely under the supervision of a treating physician or psychologist may be treated as part of physician or psychologist's opinion. A nurse practitioner working on his or her own does not constitute an acceptable medical source. Gomez v. Chater, 74 F.3d 967 (9th Cir. 1996). Because Ms. Lyman's assessment is cosigned by a psychologist, it is from an acceptable medical source.

FINDINGS AND RECOMMENDATION Page 4

that Ms. Eisel dressed well, had excellent hygiene, and was prompt for all appointments. Id. She recorded that Ms. Eisel was anxious about "normal life issues" such as finances, housing, and parents, and had low self esteem, but was beginning to have more independence from her parents and that her depression was subsiding. Id. Ms. Eisel was noted to "present[] with anxieties, but also to be looking for ways to deal with her anxieties positively and by herself." Id.

Ms. Lyman wrote that since beginning treatment, Ms. Eisel's depression had decreased to "minimal to zero," and that she had a positive attitude, increased social support, independence, and confidence in herself as a parent. Tr. 133. Although Ms. Lyman observed that Ms. Eisel had serious anxiety symptoms with some obsessive thoughts and hypervigilance, she was also managing her anxiety better. Id. Ms. Lyman opined that Ms. Eisel was competent with all daily living activities, "very focused, organized, some obsessiveness, excellent parent." Id. With respect to social functioning, Ms. Lyman wrote that Ms. Eisel's isolation had decreased, but that she had difficulty in groups of people. Ms. Lyman stated that she "communicates well one on one if she's acquainted with person," but still had "extreme shyness." Id. Ms. Lyman characterized Ms. Eisel's concentration, persistence and pace as follows: "Client able to sustain focused attention when alone or with one other person, but groups she has difficulty." [sic] Ms. Lyman noted "no episodes of failure to adapt since coming to treatment," but that she had "not sought employment." Tr. 134.

FINDINGS AND RECOMMENDATION Page 5

Peter LeBray, Ph.D. conducted a records review on behalf of the Commissioner and completed an assessment on October 24, 2005. Tr. 102-116. His conclusion was that Ms. Eisel was impaired by dysthymia, OCD and social phobia, and personality disorder not otherwise specified (NOS). He rated her functional limitations as follows: mild restriction of activities of daily living (ADLs), moderate difficulty in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence, or pace. Id. Dr. LeBray's functional capacity assessment was that Ms. Eisel's interaction with co-workers should only be on an occasional basis, but not at the level of special supervision or a sheltered workshop. Tr. 151. Dr. LeBray noted that although Ms. Eisel was occasionally distracted by affective distress, she was able to complete most tasks and routines on a timely basis. Id. Dr. LeBray thought Ms. Eisel's psychological impairments precluded employment requiring interaction with the general public. Id.

On April 27, 2006, Family Nurse Practitioner Mary Fey noted that Ms. Eisel reported having discontinued Wellbutrin, Zoloft and Xanax four months previously. Tr. 233. A chart note written on September 7, 2007, by Ms. Fey states that Ms. Eisel was "back seeing Dr. Telew and has been taking her meds again for the past three months. She is being treated for depression, anxiety, and obsessive compulsive disorder." Tr. 227.

Dr. Telew's chart notes resume on July 20, 2006. Tr. 305. Dr. Telew saw Ms. Eisel in November 2006 and December 2006. Tr. 301-05. On February 27, 2007 [mistakenly written as 2006], Dr. Telew wrote,

FINDINGS AND RECOMMENDATION Page 6

"vague [illegible] why she can't work--unable to give any clear reason, works hard to pursue disability." Nevertheless, that same day, Dr. Telew signed a Certification of Disability for the Housing Authority of Lane County, stating that Ms. Eisel was disabled as defined by the Social Security Act, 42 U.S.C. § 423 ("[i]nability to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months.") Tr. 261-62. Dr. Telew's notes for April 12, 2007 deepen the mystery, concluding as follows: "terminated with patient ... referrals given for psychiatric followup--patient terminated with me after I told her I don't support disability." Tr. 301. Ms. Eisel submitted Dr. Telew's medical records for July 2006-April 2007 to the Appeals Council, but not to the ALJ.[2]

Other evidence submitted to the Appeals Council, but not to the ALJ, indicates that on January 29, 2008, Ms. Eisel was admitted to Sacred Heart Hospital with abdominal pain and suicidal ideation. Tr. 277. At that time, Ms. Eisel reported that she had attempted

---

[2] In Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993), the court held that when the Appeals Council declines to review the decision of the ALJ, but reaches its ruling after considering the case on the merits, examining the entire record, including additional material not submitted to the ALJ, and concludes that the ALJ's decision was proper and that the additional material does not provide a basis for changing the hearing decision, the court considers both the ALJ's decision and the additional material submitted to the Appeals Council. See also Bates v. Sullivan, 894 F.2d 1059, 1063-64 (9th Cir. 1990).

FINDINGS AND RECOMMENDATION Page 7

suicide twice by overdose when she was a teenager. Tr. 278.[3] She was voluntarily admitted to the psychiatric unit, and discharged on February 5, 2008. Tr. 280, 285. By the second day of her hospitalization, she denied suicidal ideation. Tr. 287. Her diagnoses upon discharge were depressive disorder, NOS and anxiety disorder, NOS. Tr. 287.

### Hearing Testimony

Ms. Eisel testified that she last worked in 2000, for a period of "one to two days" at the Lane County Fair. Tr. 311. Her last job before that was in 1993. Tr. 325. She has not tried to work since 2000. Tr. 312. She said she was unable to work because she had problems dealing with people on a social level, taking constructive criticism, and working too slowly. Id. She does not socialize with anyone but her children, ages 13 and six and a half, id., but has a boyfriend. Tr. 317. Criticism makes her feel "attacked." Tr. 313. She has difficulty comprehending and feels panicky and frustrated. Tr. 314. While working at the County Fair job, she became flustered and anxious as she got busier. Tr. 324. She is a perfectionist about her house, constantly cleaning and re-arranging furniture. Tr. 316. She gets help from her boyfriend, her parents, and her counselor. Tr. 318. She takes Xanax for anxiety and help in sleeping, but is not currently taking anything else. Tr. 321.

///

---

[3] At her psychological evaluation by Dr. Truhn in March 2005, Ms. Eisel reported that in high school, she took an overdose of aspirin "to get attention." She said she had not had any suicidal thoughts since then. Tr. 252.

FINDINGS AND RECOMMENDATION Page 8

The ALJ called a vocational expert (VE), Mark McGowan. The ALJ asked the VE to consider an individual of Ms. Eisel's age, education and relevant work experience, with moderate limitations in her ability to: maintain attention and concentration for extended periods; maintain a rapid pace; engage in cooperative interactive teamwork endeavors; interact with the public, especially in crowded conditions; and establish her own work plans and goals. Tr. 327. The VE identified the occupations of industrial sweeper/cleaner, an unskilled job; housekeeper/cleaner, unskilled; and meter reader, unskilled. Ms. Eisel testified that she had tried to work as a cleaner in the past, but had been told she was too slow. Tr. 329.

Ms. Eisel's attorney asked the VE whether an individual with marked limitations in the ability to: maintain attention and concentration for extended periods; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and act appropriately with the general public would be precluded from any of the jobs he had named. Tr. 331. The VE testified that such limitations would preclude the individual from full-time competitive employment.

## ALJ's Decision

The ALJ found that Ms. Eisel had the following severe impairments: depression/dysthymia; anxiety/social phobia; panic disorder with agoraphobia; mild obsessive compulsive personality traits; and dependent personality disorder, with passive aggressive

traits. Tr. 17. He found her to be mildly restricted in activities of daily living, consistent with the opinion of Dr. LeBray, and able to manage independently and care for her children. Tr. 18. Also consistent with Dr. LeBray's opinion, the ALJ found that Ms. Eisel had moderate difficulties with social functioning, including anxiety in crowded places, but that treating source records referred to her ability to manage appropriate individual interactions. Id. The ALJ accepted Dr. LeBray's opinion that Ms. Eisel had moderate limitations with regard to concentration, persistence or pace because of anxiety symptoms, but that she had no cognitive limitations. Id. The ALJ found that Ms. Eisel's ability to raise her children suggested that she could manage to concentrate and persist, and that Dr. Telew had concluded that Ms. Eisel had no limitations with respect to concentration, persistence or pace. Id.

The ALJ gave very little weight to Dr. Telew's certification that Ms. Eisel was disabled as defined by the Social Security Act, on the grounds that 1) it lacked narrative explanation; 2) it did not reveal when Dr. Telew had last seen Ms. Eisel, and the last chart note of January 6, 2006, stated that her mood was stable, she had no excess anxiety, and no deficits with regard to concentration, persistence and pace, or activities of daily living. Tr. 21. Moreover, the ALJ noted that the finding of disability under the Social Security Act is an opinion on the ultimate issue reserved to the Social Security Commissioner. Tr. 22.

///

FINDINGS AND RECOMMENDATION Page 10

The ALJ found Ms. Eisel's testimony about the intensity, persistence and limiting effects of her symptoms not entirely credible because it was inconsistent with the findings of treating professionals. Tr. 19. The ALJ found that treating professionals referred to her as focused and able to manage her daily affairs; responding well to counseling and prescribed medication; and able to perform regular work activity within the functional limitations identified by the residual functional capacity assessments. Tr. 23. The ALJ cited the July 2005 assessment by Ms. Lyman and Dr. Waechter in which Ms. Eisel was found to have anxiety symptoms, obsessive thoughts and some hypervigilance, but also excellent hygiene, timely appearance for appointments, a positive attitude, increased social support, more independence from her parents, confidence in herself as a parent, the ability to sustain focused attention when alone or with another person, and the ability to live independently with her children. The ALJ also cited the evidence from Dr. Telew that Ms. Eisel was responding well to medication and that her concentration, persistence and pace were intact; Dr. LeBray's assessment that Ms. Eisel was only moderately limited in maintaining attention and concentration; and Dr. Telew's notes of January 2006, recording that Ms. Eisel's mood was stable, she had no excess anxiety, she was able to maintain activities of daily living, and had no deficits with regard to concentration, persistence, and pace. Tr. 21.

The ALJ concluded that Ms. Eisel's allegation that she was unable to work because of psychological symptoms was

FINDINGS AND RECOMMENDATION Page 11

1  unsubstantiated by the treatment notes of Ms. Eisel's treating
2  professionals and counselors.

3      The ALJ considered a third party statement dated July 25, 2005
4  from Ms. Eisel's mother, Judy Eisel. Tr. 71-78. The ALJ did not
5  give the statement full credence because the limitations listed by
6  Judy Eisel (Ms. Eisel's inability to go out alone, lack of
7  confidence, difficulty trusting others, fear of job interviews,
8  need to follow a routine) were mitigated or directly contradicted
9  by activities and tasks also listed in the statement, such as Ms.
10 Eisel's driving into town and shopping all day, going to medical
11 appointments, caring for, supervising and participating in
12 activities with her children, maintaining appropriate grooming,
13 complying with medication regimens, and managing to live within her
14 fixed income. Tr. 23.

15                              **Standard**

16     The court must affirm the Commissioner's decision if it is
17 based on proper legal standards and the findings are supported by
18 substantial evidence in the record. <u>Meanel v. Apfel</u>, 172 F.3d 1111,
19 1113 (9th Cir. 1999). Substantial evidence is such relevant evidence
20 as a reasonable mind might accept as adequate to support a
21 conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971);
22 <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). In
23 determining whether the Commissioner's findings are supported by
24 substantial evidence, the court must review the administrative
25 record as a whole, weighing both the evidence that supports and the
26 evidence that detracts from the Commissioner's conclusion. <u>Reddick</u>

27

28 FINDINGS AND RECOMMENDATION Page 12

v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). However, the Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The initial burden of proving disability rests on the claimant. Meanel, 172 F.3d at 1113; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). This means an impairment must be medically determinable before it is considered disabling.

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. In step one, the Commissioner determines whether the claimant has engaged in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the Commissioner goes to step two, to determine whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at

FINDINGS AND RECOMMENDATION Page 13

140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). That determination is governed by the "severity regulation," which provides:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

§§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step. Yuckert, 482 U.S. at 141.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41. If a claimant's impairment meets or equals one of the listed impairments, he is considered disabled without consideration of her age, education or work experience. 20 C.F.R. s 404.1520(d), 416.920(d).

If the impairment is considered severe, but does not meet or equal a listed impairment, the Commissioner considers, at step four, whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can do so, he is not considered disabled. Yuckert, 482 U.S. at 141-42. If the claimant shows an inability to perform his past work, the burden shifts to the Commissioner to show, in step five, that the claimant has the residual functional capacity to do other work in consideration of the claimant's age, education and past work

FINDINGS AND RECOMMENDATION Page 14

experience. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).

### Discussion

Ms. Eisel asserts that the ALJ erred in failing to 1) give full consideration to the report of Dr. Truhn; 2) provide clear and convincing reasons for rejecting her testimony; and 3) give proper credit to the lay evidence of Judy Eisel. She also contends that the VE's testimony is inadequate to satisfy the Commissioner's burden of showing that she retains the ability to perform work in the national economy.

### 1.    Failure to consider to Dr. Truhn's report

Ms. Eisel asserts that the ALJ failed to give clear and convincing reasons, based on substantial evidence in the record, for not giving conclusive weight to Dr. Truhn's finding that personality testing revealed significant psychological turmoil and distress, including agitation, ruminating thoughts, compulsive behaviors, poor judgment, and distrust of others; his observations that her parents appeared to make most of her decisions and that Ms. Eisel appeared to have problems with concentration and attention; and his suggestion of a sheltered workshop. She argues that the ALJ erred in drawing the inference from Dr. Truhn's endorsement of vocational services that Ms. Eisel could work, because the ALJ overlooked the fact that Dr. Truhn suggested a sheltered workshop rather than direct entry into the competitive workforce.

///

FINDINGS AND RECOMMENDATION Page 15

The ALJ stated in his opinion that he gave Dr. Truhn's opinions "substantial weight" with respect to the diagnoses and Ms. Eisel's noted anxiety symptoms, but concluded that Dr. Truhn had not suggested that her mental impairments incapacitated her to the extent that she could not work, "and in fact, his endorsement of vocational placement implies that she could manage working." Tr. 20.

I find no error in the ALJ's consideration of Dr. Truhn's opinions. Although Dr. Truhn's opinions are supported by the psychological testing only he performed, they are inconsistent with those of treating physician Dr. Telew, treating mental health practitioner Lyman, and reviewing psychologist Dr. LeBray. As a treating physician, Dr. Telew's opinion generally carries more weight than that of Dr. Truhn, an examining psychologist, and Dr. Truhn's opinion generally carries more weight than that of Dr. LeBray, a reviewing psychologist. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); 20 C.F.R. § 404.1527(d).

So long as the ALJ's findings are supported by substantial evidence in the record as a whole, the court must uphold the Commissioner's decision even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40. Dr. Truhn's suggestions about vocational rehabilitation and a sheltered workshop can rationally be interpreted to mean that Ms. Eisel was not precluded from working.

There is substantial evidence in the record to support the ALJ's acceptance of the opinions of Doctors Telew and LeBray, and

FINDINGS AND RECOMMENDATION Page 16

the assessment of Ms. Lyman and Dr. Waechter, over Dr. Truhn's description of Ms. Eisel's symptoms. In March 2005, Dr. Truhn found, on the basis of MMPI-II scores, indications of low self esteem, depression, and obsessive/compulsive behaviors and thinking. Ms. Lyman observed in July 2005 that Ms. Eisel had low self esteem, but was beginning to have more independence from her parents. Although Ms. Eisel presented with anxiety, she was also observed by Ms. Lyman to be developing coping skills for managing the anxiety. Ms. Lyman observed that after treatment, Ms. Eisel's depression had decreased to "minimal to zero," and that she had a positive attitude, increased social support, independence, and confidence in herself as a parent. Ms. Lyman described Ms. Eisel as "very focused, organized, some obsessiveness, excellent parent," and characterized Ms. Eisel's concentration, persistence and pace as follows: "Client able to sustain focused attention when alone or with one other person, but groups [sic] she has difficulty."

Dr. Telew's Mental Status report dated January 5, 2006, notes that Ms. Eisel was euthymic, with a stable mood, intact cognition, concentration, persistence and pace, no excess anxiety, and no agitation. All of this evidence was cited by the ALJ. Dr. Telew's notes for July 2006 to April 12, 2007, state "I do not support disability" and "[P]atient terminated with me after I told her I don't support disability." By April 2007, Dr. Telew's diagnoses were personality disorder, "mild OCD," and social phobia.

2.    Rejection of claimant's testimony

Ms. Eisel asserts that the ALJ erred in rejecting her

FINDINGS AND RECOMMENDATION Page 17

testimony that it was difficult for her to deal with people, she did not accept criticism well, she worked very slowly, and she was not able to understand instructions. Ms. Eisel argues that this testimony is corroborated by Dr. Truhn, Ms. Lyman, and, in particular, the opinion of nurse practitioner Mary Fey that Ms. Eisel's mental problems "prevent her from having adequate work skills and behaviors."

The ALJ cited substantial evidence to support his rejection of this testimony, to the extent that it was rejected. First, the ALJ accepted Ms. Eisel's testimony that it was difficult for her to deal with people by including in his residual functional assessment limited contact with co-workers and no contact with the general public. Ms. Eisel's statement that she did not accept criticism is not corroborated by any objective source in the record, and is inconsistent with observations by professionals that she had a positive attitude, worked on developing appropriate coping skills, and attended counseling sessions on a regular basis. Although Ms. Eisel testified that when she worked she was very slow, this statement is not corroborated even by Dr. Truhn, who found that she functioned in the low average range of intellectual ability, did not have a learning disability, and was in the borderline range of ability in the area of freedom from distractibility. Further, as the ALJ found, Dr. Truhn did not opine that Ms. Eisel's impairments precluded her from working. The ALJ also cited to the findings of other practitioners that were inconsistent with this testimony, such as Ms. Lyman's opinion that Ms. Eisel was very focused,

FINDINGS AND RECOMMENDATION Page 18

organized, and able to sustain attention when alone or with another person, and Dr. Telew's observation that Ms. Eisel's cognition and concentration, persistence and pace were intact and that she had no excess anxiety or agitation.

The ALJ properly rejected Mary Fey's opinion that Ms. Eisel's "mental illnesses prevent her from having adequate work skills and behaviors." Tr. 264.[4] As the ALJ noted, there is no indication in the record that Ms. Fey had assessed Ms. Eisel's occupational limitations or work skills, and in the document itself Ms. Fey suggests getting "more detailed information regarding her disability" from Dr. Telew. Id. Ms. Fey's letterhead contains only her own name and that of another nurse practitioner; there is no suggestion in the document that she works under the supervision of a physician or psychologist. As a nurse practitioner working her own, Ms. Fey is not an acceptable medical source. Gomez v. Chater, 74 F.3d 967 (9th Cir. 1996).

### 3. Failure to accept statements of Judy Eisel

Ms. Eisel asserts that the ALJ did not give proper credit to the lay evidence of Judy Eisel that Ms. Eisel takes all day to clean her house, spends lots of time on meals, although they are mostly packaged and prepared foods, spends all day shopping for an item, then takes it back, cannot balance her checkbook, has very few friends, and "goes to pieces" in response to stress. I am unpersuaded by this argument. The ALJ properly took Judy Eisel's

---

[4] The statement appears as a one-sentence conclusion in a four sentence document.

FINDINGS AND RECOMMENDATION Page 19

statements about Ms. Eisel's activities and symptoms into account, see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) and gave specific reasons germane to Judy Eisel's testimony for discounting portions of it. Id.; Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006). The internal inconsistencies in the statement are sufficient to warrant the ALJ's decision not to accept it in full.

**4.    Failure to carry burden of proving claimant can perform work in the national economy**

Ms. Eisel asserts that the VE's testimony is not sufficient to meet the Commissioner's burden of proving that she retains the residual functional capacity to perform work in the national economy, because the ALJ failed to include in his hypothetical to the VE Ms. Eisel's testimony about "marked limitation in her ability to accept instructions and respond appropriately to criticism," and her tendency to "focus too much on details and work very slowly." As a threshold matter, I note that "marked" limitations were not in Ms. Eisel's testimony, but in the questions posed to the VE by Ms. Eisel's attorney.

In any case, as discussed above, limitations on accepting instructions and responding to criticism, and working slowly, are supported only by Ms. Eisel's testimony at the hearing, which the ALJ found not credible because unsupported by objective evidence or observations by mental health practitioners. I find no error.

### Conclusion

I recommend that the Commissioner's decision be affirmed.

### Scheduling Order

These Findings and Recommendation will be referred to a

FINDINGS AND RECOMMENDATION Page 20

district judge.  Objections, if any, are due November 4, 2009.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due November 18, 2009. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this  day of _October 20_____, 2009.

_____
Dennis James Hubel
United States Magistrate Judge

FINDINGS AND RECOMMENDATION Page 21